IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 3:17-688-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| JERMAINE TYRONE SOUTHALL | ) | |
| _____ | ) | |

This matter is before the court on the defendant's *pro se* motion for a reduction in his sentence pursuant to the First Step Act of 2018[1] and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 1371). Seeking compassionate release, the defendant states that the threat posed by the ongoing COVID-19 pandemic, coupled with his current medical problems, constitute extraordinary and compelling reasons for his immediate release.

The government has responded in opposition, arguing that the defendant has not shown an extraordinary and compelling reason for release. Additionally, the government asserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release. The defendant did not reply to the government's response.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is respectfully denied.

---

[1] Pub. L. 115-015 (S. 756), 132 Stat. 015 (Dec. 21, 2018).

1

STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals are to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever

is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)." As a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden

3

to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

*Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on

their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

The government concedes that the defendant has properly exhausted his administrative remedies. Thus, the court will proceed to review the matter on the merits.

## DISCUSSION

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his or her medical conditions render them particularly susceptible to severe illness or death should he or she contract the virus.

*See United States v. Youngblood*, 858 Fed. Appx. 96, 98 (4th Cir. 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

*The Defendant's Motion for Compassionate Release*

In his motion (ECF No. 1371), the defendant contends that he is entitled to immediate release because he suffers from obesity, hypertension, a heel spur, hematuria, para-diabetes, and sleep disorder. He contends that these conditions, coupled with the COVID-19 pandemic, necessitate his immediate release from custody from a 324-month sentence imposed less than 2 years ago.

The Presentence Report (PSR) (ECF No. 1256) prepared in connection with the defendant's October 2020 sentencing reveals that the defendant suffered from all of the medical afflictions he now complains of at the time he was sentenced and also when he committed the crimes at issue in this case. Additionally, as the government points out, the defendant has contracted COVID and has completely recovered. He has also declined an offer to be vaccinated for future COVID exposure. Finally, the government points out in its opposition memorandum (ECF No. 1420), that there are currently no pending COVID-19 cases at FCI Williamsburg where the defendant is housed.

On this record, the court concludes that the defendant has not shown an extraordinary and compelling reason for his immediate release from federal custody.

Moreover, and perhaps more importantly, even if the defendant had demonstrated an extraordinary and compelling reasons for his release, the court would nevertheless be

6

compelled to decline the request after a review of the defendant's individualized sentencing factors, his post-sentencing conduct, and all of the surrounding circumstances in this case. In support of this conclusion, the court will address the § 3553(a) factors in turn:[2]

1. *Nature and Circumstances of the Offense.* The defendant, an acknowledged member of the Bloods Street gang, was the unquestioned leader of a vast drug distribution conspiracy that spanned an area from New York to South Carolina. He pleaded guilty to his involvement in the conspiracy to possess with intent to distribute and distribute 1 kilogram or more of heroin, a schedule I controlled substance. The defendant and some of his co-conspirators bought kilogram quantities of cocaine and heroin to South Carolina using secret compartments installed in motor vehicles.

The defendant is one of 16 defendants named in a 46-Count Superseding Indictment filed on July 24, 2018. The defendant was named in the following Counts:

Count 1:     Conspiracy to possess with intent to distribute and distribute 1 kilogram or more of heroin, a Schedule I controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 8461, and 851;

Count 9, 11: Use of a telephone communication facility to facilitate the commission of a felony under the Controlled Substances Act, in violation of 21 U.S.C. §§ 84l(a)(1) and 846; 843(b), and 18 U.S.C. § 2;

Count 23:    Possession with intent to distribute and distribution of a heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c) [March 16, 2017];

---

[2] It bears mention that, unlike many compassionate release requests presented to this court, the sentence in this case was so recent that the court has independent recollection of many of the facts cited herein.

Count 26:    Possession with intent to distribute and distribution of a heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c) [March 30, 2017];

Count 31:    Possession with intent to distribute and distribution of a heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c) [May 18, 2017];

Count 36:    Possession with intent to distribute and distribution of a heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c) [June 2, 2017];

Count 38:    Possession with intent to distribute and distribution of a heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c) [June 8, 2017];

Count 42:    Conducting financial transactions affecting interstate and foreign commerce involving the proceeds of specified unlawful activity, that is, narcotics trafficking; in violation of 28 U.S.C. § 1956(h);

Count 43:    Possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1), 924(a), and 924(e);

Count 44:    Possession of firearms in furtherance of, and use and carry firearms during and in relation to, a drug trafficking crime which is prosecutable in a court of the United States; in violation of 18 U.S.C. 924(c)(1)(A).

(ECF No. 1256).

Pursuant to a written plea agreement (ECF No. 796), the defendant pleaded guilty to Count 1. He was ultimately held accountable for 36,500 grams of heroin, and 71,940 grams of cocaine which translated to a total drug weight equivalent of 50,888 kilograms of converted drug weight. The defendant used multiple locations to store, package, and distribute quantities of drugs for his organization, including his personal residence and that of two of his co-conspirators, along with a restaurant. During a search of his residence, law enforcement officers discovered 3 firearms, and drug distribution paraphenalia, intercepted wiretap communications. Co-defendant interviews further reveal that members of the

defendant's organization were often armed with firearms while distributing drugs for the organization.

The PSR indicated that the defendant's total offense level was 43 and his criminal history category was V. This yielded a Guideline sentence of life imprisonment.

At the sentencing hearing on October 23, 2020, several changes were made to the PSR in response to the defendant's objections. The government conceded that the stash house and obstruction enhancements should be withdrawn. Also, the government conceded that certain drug weights attributed to the defendant by co-defendant Muhammad were overstated. These changes lowered the defendant's total offense level to 37. With a criminal history category of V, the guidelines range was now 324 to 405 months. The court denied the defendant's request for a variance and sentenced the defendant to 324 months (the low end of the Guidelines range), with a term of supervised release of 10 years.

The defendant did not file an appeal of his sentence and conviction.

The defendant has served approximately 56 months of his 324-month sentence and is currently scheduled to be released in August 2040. He is housed at Williamsburg Federal Correctional Institution.

2. *History and Characteristics of the Defendant*. The defendant's criminal history began in 1994 at the age of 17 and consists of prior felony convictions for: possession of controlled substance with intent to sell (1994); criminal possession of controlled substance 3rd degree: drug narcotics intent to sell (1995); possession of stolen property, 4th degree

(1996); sale controlled substance, 5th degree (1997); two counts of possession intent to manufacture, distribute, or dispense controlled dangerous substance (2003 and 2010); and manufacturing, distributing, possessing with intent to distribute, or dispensing controlled dangerous substance conspiracy (2008). In addition to his felony convictions, the defendant has prior misdemeanor convictions for: petit larceny (1996); possession of controlled substance, 7th degree (1998); possession of forged instrument, 3rd degree (2009); and giving false information (2013).

The defendant is 44 years old. He is single and has 6 children. He has used controlled substances on and off throughout his life. Although the defendant had at least two prior convictions for controlled substance offenses, he was not classified as a career offender at sentencing. This is because of the Fourth Circuit Court of Appeals decision in *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019) (conspiracy to commit a controlled substance offense does not qualify as an offense of conviction under the career offender guideline).

The defendant finished the 9th grade of high school in Queens, New York. He later earned his GED while in New York. Prior to his arrest for the offense of conviction, he operated a restaurant known as "Lil Mammas" in Columbia since 2014.

*Post Sentencing Conduct*

During the 56 months the defendant has been incarcerated, he has had one disciplinary infraction on his record for being in an unauthorized area and refusing to leave when directed. Commendably, he has taken five vocational/educational courses while incarcerated

including exercise, self-care, health fair, diabetes, and HIV/AIDS awareness.

The defendant states that if released he will live with his mother and will gain employment easily with his professional qualifications as a small business owner. He states that he has strong ties to the community, strong peer and family support, access to healthcare to offset any costs the BOP would otherwise incur and reliable transportation.[3]

3. *Seriousness of the Crimes*. As evidence by the historical facts set out in the PSR involving the defendant's instant conviction, this court regards the defendant's crime as very serious, fully supportive of a significant sentence. Suffice it to say that this court considers the defendant's crimes to be substantial. The defendant, a gang member, was the unquestioned leader of large drug distribution enterprise. He used stash houses and had weapons.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific deterrents.

---

[3] The defendant also raises as a ground for his immediate release the fact that he has a loving and supportive family ready to receive him if he is released. The court understands this argument, has carefully considered it, and must respectfully reject it. To reward someone with early release because he is fortunate enough to have a loving and supportive family would work to the disadvantage of another defendant, who committed the same crime under the same circumstances, who did not have family support. This would create a significant disparity in sentencing which the law should not recognize. Thus, although the court has carefully considered this argument, it must respectfully reject it.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant.* The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant. The court views this as an important factor to be addressed in considering the present motion. This is perhaps one of the most important factors counseling against the defendant's immediate release.

7. *Need to Avoid Unwarranted Disparity.* Viewing the defendant's sentence as compared with the culpability of the defendant and his associates, his imposed sentence was and is in line with the other co-defendants.

In sum, the § 3553(a) factors discussed above strongly militate against a sentence reduction at this time. As evidenced by this court's lengthy term of imprisonment, the defendant was convicted as a leader and organizer of a major drug trafficking organization. He led a drug enterprise responsible for trafficking in more than 36 kilograms of heroin and more than 70 kilograms of cocaine from New York to South Carolina. His involvement was extensive and followed several prior drug convictions over the past 25 years.

## CONCLUSION

For the foregoing reasons, the court determines that the defendant has not demonstrated an extraordinary and compelling reason due to his medical conditions. Even if he had, the defendant's release at this time is not appropriate in light of this court's individualized assessment of the § 3553(a) factors, including the defendant's post-sentencing conduct. The defendant has served only a small portion of his sentence. The motion

(ECF No. 1371) is respectfully denied.[4]

       IT IS SO ORDERED.

March 9, 2022  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge

---

[4] To the extent that the defendant seeks to have this court direct the BOP to place the defendant in home confinement, this court is without authority to do so. The discretion to release a prisoner to home confinement lies solely with the Attorney General. See 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this. See CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.")